**UNITED STATES of America.**

v.

**Ottis Mayo JONES.**

**Ottis Mayo JONES, Petitioner,.**

v.

**Curtis REID, Superintendent, District of Columbia Jail**
**and**
**The United States Marshal, Respondents.**

**Cr. No. 23394.**

**Civ. No. 9111.**

United States District Court
D. Maryland.

Sept. 18, 1956.

See, also, D.C. 147 F.Supp. 268.

Walter E. Black, Jr., U. S. Atty., and J. Jefferson Miller, II, Asst. U. S. Atty., Baltimore, Md., for the United States in Criminal No. 23394 and for respondents in Civil No. 9111.

Ottis Mayo Jones, pro se.

ROSZEL C. THOMSEN, Chief Judge.

Ottis Mayo Jones was found guilty by a jury and sentenced by Judge Chesnut for the crime of interstate transportation of forged securities in violation of 18 U. S.C. § 2314. The judgment was affirmed by the Fourth Circuit, 234 F.2d 812, 813. He has filed in the criminal case a "Motion in the Nature of Coram Nobis", and has also filed a petition for a writ of habeas corpus. At the hearing in open court held on the motion and the petition, Jones relied upon two contentions: (1) that he was denied the equal protection of the law and due process of law, as guaranteed by the Fourth and Fifth Amendments to the Constitution, in that Mrs. Florence Coursey, the woman with whom he had been living for several years and to whom he sometimes referred as his "wife", was prevented from testifying in his behalf by threats made to her by agents of the Federal Bureau of Investigation; and (2) that Judge Chesnut had denied a motion, claimed to have been made before the imposition of sentence, for a psychiatric examination to determine his competency to stand trial and to conduct his own defense.

(1) Mrs. Coursey testified that she had not been threatened by any agents of the Federal Bureau of Investigation. Jones offered no evidence which proved any such threats.

(2) Jones was arraigned before me on December 9, 1955. At that time he stated that he did not have an attorney and did not wish the court to appoint an attorney for him. He moved that the United States Attorney be required to furnish him a bill of particulars, and photostats of the instruments on which he was indicted. I granted the motion, and the documents were made available to Jones. He requested a trial by jury, and stated again that he did not want an attorney. At that time I saw no reason to doubt that Jones was mentally capable of conducting his own defense.

On January 6, 1956, Judge Chesnut held a hearing on a motion made by Jones for the issuance of summonses for witnesses. At that time Jones reiterated that he did not want counsel but wished to proceed by himself, although the Judge said "I am not at all sure that that is the wise thing for you to do". Jones replied that he understood and still wished to defend himself.

The case came on for trial before Judge Chesnut and a jury on February 1, 1956. Jones was found guilty by the jury on four counts after a trial lasting two days. A motion for new trial was made and overruled. Judge Chesnut then conducted a hearing with respect to the sentence which should be imposed; the Assistant United States Attorney in charge of the case and Jones both made a number of statements and answered questions propounded by the court. At the very end of this hearing, Judge Chesnut asked the probation officer whether any suggestion had ever been made to him that Jones needed psychiatric treatment or that he had any mental unbalance of any kind. Mr. Kilmer, the probation officer, replied that no such suggestion had been made to him. The Judge then asked Jones whether he had ever had any treatment. Jones replied: "Your Honor, that should be apparent. I mean it should be apparent to—shall we say all intelligent people? Now, I am under the impression that I know right from wrong. That is

my opinion. * * * And I feel that I have done right." The Judge stated that he did not mean by his question to indicate anything to the contrary; that before imposing sentence he likes to know as much about the defendant's personality as is available; and "therefore, I asked the question whether you had ever had any mental trouble or disturbance of any kind". Jones then asked: "Could I make a motion for an examination along that line? * * * If the jury finds me wrong, the Court has found me wrong, society has found me wrong, and still I think I am right—undoubtedly there is a mental disorder of some kind. I can't say anything else." To which the Judge replied: "We will have to look into that later on in connection with some government institution."

Judge Chesnut thereupon sentenced Jones. A few days later Jones filed a written motion for a new trial, which was heard at length by Judge Chesnut and overruled. Before this motion was filed, Judge Chesnut had arranged to have Jones examined by Dr. Ralph Truitt, a competent and experienced psychiatrist, formerly head of the Department of Psychiatry at the Medical School of the University of Maryland. Dr. Truitt reported that Jones "appears to be a rather typical psychopathic personality of a borderline type. In general there is nothing to indicate that he is either feeble-minded or psychotic. Most of his trouble in social adjustment appears to stem from his broken home and father pattern. One doubts that he will likely make good in the community."

At the request of both Judge Chesnut and Jones, I conducted the hearing on the petition for writ of habeas corpus and on the motion in the nature of coram nobis. Dr. Truitt testified that Jones had no brain deterioration when he examined him on February 7, 1956; that by the term "psychopathic personality" he meant that Jones was a bit off color from the usual cross section of personality, socially, emotionally, etc., but that he was not over the line, not psychotic; that Jones knew the difference between right and wrong and was a rather typical social psychopath—having difficulty getting along in society, constantly litigating, and having a little persecution complex; that Jones was mentally able to defend himself at the time of his trial, and, indeed, in view of his personality and confidence in his own ability to present legal points as a result of his study of legal problems, was probably better able mentally to conduct his own defense than to cooperate with counsel.

■■ Jones notes that the Assistant United States Attorney argued that Jones has a warped sense of what is right and what is wrong. The *tabula rasa* of human personality is frequently warped to some degree before it is fully inscribed. Few of us escape some slight twist or deviation. But all such deviations from the ideal do not require the conclusion that the tablet is so defective that it is unfit for ordinary purposes. It is only when a psychopathic personality crosses the borderline referred to by Dr. Truitt that the individual may be considered insane or so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in or conduct his own defense. I conclude that at the time of his trial and at the present time Jones had not and has not crossed that borderline.

Moreover, Jones did not make a motion under Title 18 U.S.C. § 4244, for a psychiatric examination as to his ability to understand the proceedings against him or properly to conduct his own defense, at any time before sentence was imposed. During the colloquy between Judge Chesnut and Jones immediately before sentence was imposed, the question at issue was not Jones' ability to conduct his defense; it was whether he needed psychiatric treatment. No question of mental capacity at the time of the offenses or at the time of trial had been raised before or during the jury trial.

However, I concur in the suggestion made by the United States Attorney that an examination should be made pursuant to Title 18 U.S.C. § 4245, and recommend to the Director of the Bureau of Prisons

that such an examination be made by a Board of Examiners under that section. If the Director of the Bureau of Prisons shall certify that Jones has been examined by a Board of Examiners under sec. 4245 and that there is probable cause to believe that he was mentally incompetent at the time of his trial, this court will hold a hearing to determine the mental competency of the accused, in accordance with the provisions of secs. 4244 and 4245.

In the habeas corpus case, the petitioner is remanded to the custody of the United States Marshal. In the criminal case, the motion in the nature of coram nobis is denied.